SANDRA R. BROWN
Acting United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS
California Bar No. 101281
Assistant United States Attorney
Asset Forfeiture Section
        Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-2569
        Facsimile: (213) 894-7177
        E-mail: Victor.Rodgers@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV 17-08941 |
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. §§ 981(a)(1)(A) & (C) and 984 |
| $1,607,760.00 IN U.S. CURRENCY, $1,861,787.66 IN BANK FUNDS, APPROXIMATELY SIXTY-FOUR GOLD BARS AND THREE SILVER BARS AND MISCELLANEOUS SILVER AND GOLD COINS, APPROXIMATELY FIFTY GOLD BARS AND $109,990.00 IN FUNDS SEIZED FROM ONE COINBASE ACCOUNT, | [USSS] |
| Defendants. | |

        Plaintiff United States of America brings this claim

against defendants $1,607,760.00 In U.S. Currency, $1,861,787.66

In Bank Funds, Approximately Sixty-Four Gold Bars And One Silver Bar And Miscellaneous Silver And Gold Coins, Approximately Fifty Gold Bars and $109,990.00 in Funds Seized From One Coinbase Account (collectively, the "defendants"), and alleges as follows:

<u>JURISDICTION AND VENUE</u>

1.    The government brings this <u>in</u> <u>rem</u> forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3.    Venue lies in this district pursuant to 28 U.S.C. § 1395.

<u>PERSONS AND ENTITIES</u>

4.    The plaintiff in this action is the United States of America.

5.    The defendants in this action are:

i.    $1,607,760 in U.S. Currency (the "defendant currency") and consisting of (a) $927,760.00 in U.S. Currency seized on or about July 20, 2017 during the execution of a State of California search warrant at the Los Angeles, California residence of Inwook Yoo ("Yoo"); (b) $300,000.00 in U.S. Currency seized on or about July 24, 2017 during the execution of a State of California search warrant at Bank of America, 3442 Wilshire Boulevard, Los Angeles, California 90010 from Bank of America Safety Deposit Box Number 0347-00V745 in the name of Yoo; (c) $300,000.00 in U.S. Currency seized on or about July 24, 2017 during the execution of a State of California search warrant at Chase Bank, 2970 West Olympic Boulevard, Los Angeles,

California 90006 from Chase Safety Deposit Box Number 1249 in the name of Yoo; and (d) $80,000.00 in U.S. Currency seized on or about July 20, 2017 from Yoo while Yoo was present at CA Metro Auto, 1501 West Washington Boulevard in Los Angeles, California;

ii.   $1,861,787.66 In Bank Funds (the "defendant bank funds") seized on or about July 21, 2017 during the execution of State of California search warrants and consisting of:

(a) the following funds seized at Chase Bank, 2970 West Olympic Boulevard, Los Angeles, California: (1) $691,558.82 from a bank account at Chase Bank in the name of Yoo and with the last four digits ending in 6688; (2) $351,201.56 from a bank account at Chase Bank in the name of Yoo and with the last four digits ending in 6250; (3) $212,107.46 seized from a bank account at Chase Bank in the name of I. Nuk, Inc. and with the last four digits ending in 6525; and (4) $104,318.40 seized from a securities account at Chase Bank in the name of I. Nuk, Inc. and with the last four digits ending in 0913; and

(b) the following funds seized at Bank of America, 3342 Wilshire Boulevard, Los Angeles, California 90010: (1) $259,723.76 from a bank account at Bank of America in the name of Yoo and with the last four digits ending in 6343; and (2) $242,877.66 seized from a bank account at Bank of America in the name of Yoo and with the last four digits ending in 2910;

3

iii. Approximately Sixty-Four Gold Bars And Three Silver Bars And Miscellaneous Silver and Gold Coins seized on or about July 20, 2017 during the execution of a State of California search warrant at Yoo's Los Angeles, California residence and consists of (a) gold and silver bars aggregating $81,569.57 in value, including sixty-three one-ounce gold bars valued at $80,955.00; one five gram gold bar valued at $206.57; two ten-ounce silver bars valued at $340.00; and one four-ounce silver bar valued at $68.00; and (b) miscellaneous silver and gold coins aggregating $1,929.25 in value, including three one/quarter-ounce Gold Eagles coins valued at $963.75; five one/tenth-ounce Gold Eagles coins valued at $642.50; eight one-ounce Silver Eagles coins valued at $136.00; two America the Beautiful silver coins valued at $170.00; and one 2017 Australia Silver Year of Rooster coin valued at $17.00;

iv. Approximately Fifty Gold Bars, which consists of approximately fifty one-ounce gold bars valued at $64,250.00 seized on or about July 24, 2017 during the execution of a State of California search warrant at Bank of America, 3342 Wilshire Boulevard, Los Angeles, California 90010 from Bank of America Safety Deposit Box Number 0347-00V745 in the name of Yoo; and

v. $109,990.00 in Funds Seized From One Coinbase Account, which consists of $109,990.00 seized on or about July 27, 2017 during the execution of a State of California search warrant at Coinbase, Inc., 548 Market Street No. 23008, San Francisco, California 94104 from an account at Coinbase, Inc. with the last four digits ending in 3122 and in the name of Yoo.

4

6.   The defendants are currently in the custody of the United States Secret Service in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7.   The interests of Yoo, I. Nuk, Inc. and retailers, financial institutions and others issuing credit cards pertaining to this matter (i.e., American Express, Capitol One Bank, Citibank, N.A., CSIS NA Investigations, Discover Financial Services, Macy's, J.P. Morgan Chase Bank and Synchrony Bank) may be adversely affected by these proceedings.

BASIS FOR FORFEITURE

Background Regarding Credit Card Bust-Out Fraud Schemes

8.   Credit card bust-out fraud schemes involve the intentional manipulation of the payments due on a credit card account, in order to spend, without repaying, more than the maximum available credit limit on the credit card account.  The scheme is typically committed when a credit cardholder makes credit card purchases up to or near the account maximum credit limit established by the credit card issuer.  Thereafter, the credit cardholder makes payments to reduce the credit card account balance significantly or to a zero balance, and will then immediately make credit card purchases back to or near the account maximum credit limit.  The previously submitted payment is then returned as an unpaid item, usually because the payment was made from an invalid account number, from an account that is in a closed status or was made from an account lacking sufficient funds to cover the payment.  As a result of this activity, which is referred to as check kiting, the credit card

account balance reaches levels close to double the credit card account's maximum credit limit.  The credit card account is then abandoned, leaving an unpaid debt of about twice the credit card account maximum credit limit and a loss to the credit card issuer in approximately the same amount.

The Commencement Of The Law Enforcement Investigation

9.  After receiving information in approximately February 2017 from a major retailer regarding a suspected credit card bust-out fraud scheme involving about twenty three credit card accounts for credit cards issued by the retailer, law enforcement began conducting an investigation regarding the suspected criminal credit card bust-out fraud scheme.  As a result of the investigation, officers determined that CA Metro Auto, an auto parts business located in Los Angeles, California and owned by Ted Jaeyun Kim, participated in the scheme as a collusive merchant.  A collusive merchant is a business that processes phony, non-legitimate credit card transactions, for which no goods, services or any other types of items are supplied, in exchange for a percentage of the amount of the credit card transaction.  According to credit card records, there was over $700,000.00 in 190 credit card purchases, using the twenty-three credit cards issued by the retailer discussed above, at CA Metro Auto during an eleven-month period.  In addition, credit card records and other documents reflected a November 11, 2016 $1,239.75 charge, which was part of a larger order, for the delivery of concrete to a Gardena, California company called King Rosecrans Car Wash and identified Kim as

1  King Rosecrans Car Wash's contact person for the credit card

2  transaction.

3  Kim's July 19, 2017 Discussions With Law Enforcement Officers

4      10.   Officers traveled to CA Metro Auto on or about July

5  19, 2017 to execute a State of California search warrant at that

6  location, and spoke to Kim, who told officers that he (Kim)

7  owned both CA Metro Auto and King Rosecrans Car Wash.   In

8  addition, Kim initially lied to officers, denying involvement in

9  any credit card bust-out fraud scheme, but ultimately admitting

10 that Kim's company CA Metro Auto participated in the fraud

11 scheme as a collusive merchant once officers provided Kim with

12 information reflecting Kim and his company's role in the illegal

13 activity.

14     11.   With respect to the Robinson Ready Mix Concrete-King

15 Rosecrans Car Wash concrete delivery credit card charges, Kim

16 first told officers that he (Kim) used credit cards Kim obtained

17 from a former CA Metro Auto customer, in order to pay

18 approximately $12,000.00 to Robinson Ready Mix Concrete for

19 concrete and repair work to be performed at the carwash.

20 According to Kim, when Kim told the former CA Metro Auto

21 customer that he (Kim) could not afford to pay Robinson Ready

22 Mix Concrete for the items Kim needed, the former CA Metro Auto

23 customer told Kim that the customer knew two persons willing to

24 allow Kim to use their credit cards to pay Robinson Ready Mix

25 Concrete.

26     12.   However, when officers asked Kim to provide the names

27 of the two persons whose credit cards Kim had used to pay

28 Robinson Ready Mix Concrete, Kim claimed that the two persons

7

had left to return to South Korea.  Similarly, when officers asked Kim about the former CA Metro Auto customer that had supplied the credit cards, Kim again provided no details regarding the individual, stating instead that he (Kim) could not remember the former customer's name, telephone number or vehicle information.  Officers told Kim that officers disbelieved Kim's story and knew that the credit cards Kim used to pay Robinson Ready Mix Concrete had been fraudulently obtained.  In addition, officers told Kim that officers knew that over thirty additional fraudulently obtained credit cards had been used to charge more than $700,000.00 from CA Metro Auto since July of 2016.

13.  Still, Kim stated that he (Kim) was unaware of any fraudulent credit card transactions occurring at Kim's business CA Metro Auto.  Kim claimed that for each credit card purchase occurring at CA Metro Auto, Kim would swipe the CA Metro Auto customer's credit card through the credit card terminal and, if the credit card transaction was approved, staple the invoice and receipt together.  After officers told Kim that officers believed that someone was brining fraudulently obtained credit cards to Kim's store, someone within Kim's business was processing fraudulent credit card transactions and officers would be searching CA Metro Auto, including the company's computer records, Kim finally admitted that he was involved in the scheme and told officers the following.

14.  In approximately January or February 2016, two Korean males named Jimmy Lee and Andy Kim (whom officers later identified as Yoo) came into CA Metro Auto, asked Kim whether

8

they could swipe credit cards at Kim's business and told Kim that he (Kim) could keep 15% of the charged amount while Kim would have to pay Lee and Andy Kim the remaining 85% of the charged amount.  Kim agreed to allow Lee and Andy Kim to swipe the credit cards, none of which was in Lee or Andy Kim's names, at CA Metro Auto.  (Kim later clarified and told officers that Lee and Kim never came to CA Metro Auto together, and instead apparently worked separately from each other).

15.  When the credit card transactions were approved, a fake invoice would be created under some CA Metro Auto existing customer account.  Once the funds from the credit card transaction were deposited into Kim's bank account, Kim would pay Lee and Andy Kim their share of the funds by check.  Kim provided to officers Kim's records regarding the purchases made with fraudulently obtained credit cards, including copies of credit cards, signed sales receipts and invoices.  As to the concrete delivery credit card charges, Kim finally admitted to officers that Lee (and not a former CA Metro Auto customer) was the person that provided the two credit cards Kim used to pay Robinson Ready Mix Concrete, after Kim told Lee that he (Kim) needed money for pouring the concrete.

16.  Kim showed officers numerous text messages that Kim had received from Andy Kim, including messages that contained credit card account numbers and credit card images.  While Kim was speaking with officers, Kim received a text message from Andy Kim stating that Andy Kim intended to cash an $8,000.00 check that Kim had provided.  Kim told officers that Kim's $8,000.00 payment to Andy Kim was for fraudulent credit card

charges.  At officers' direction, Kim sent a text to Andy Kim instructing Andy Kim not to cash the check, but instead bring the check to CA Metro Auto the next day in exchange for $8,000.00 in cash provided by Kim.  In reply, Andy Kim agreed to do so.

Yoo's July 20, 2017 Discussions With Law Enforcement Officers

17.  During a July 20, 2017 telephone conversation placed by Kim to Andy Kim, Andy Kim confirmed that he (Andy Kim) would come to CA Metro Auto that day to pick up the $8,000.00 in cash and would be bringing credit cards to swipe.  When Andy Kim arrived at CA Metro Auto on July 20, 2017, officers found him to be carrying a backpack containing, among other things, $80,000.00 (i.e., part of the defendant currency), about ten credit cards in various names other than Yoo's, receipts related to fraudulent credit card charges, a notebook detailing hundreds of fraudulent charges made under various fictitious identities, safe deposit box keys, six partially completed checks drawn on CA Metro Auto LLC's Bank of America account, three blank checks drawn on I. Nuk, Inc.'s Chase Bank account and two cellular telephones.  When officers spoke with Andy Kim on July 20, 2017, Andy Kim (whom officers identified as Yoo) told officers the following.

18.  Yoo was not merely a runner for the bust-out scheme but was instead the person behind the scam; Yoo created the synthetic (i.e., fictitious name) identities, obtained the fraudulent credit cards and took the credit cards to collusive merchants like CA Metro Auto to conduct the credit card transactions.  In furtherance of the scheme, Yoo opened post

10

offices boxes in Hollywood and Koreatown, used those post office boxes as the addresses for the credit card accounts and had about eight post office boxes associated with the synthetic identities.  After receiving the credit cards in the mail, Yoo would offer merchants 15% of whatever transactions the merchants were able to process through the credit card accounts and receive the remaining 85% as Yoo's share of the profit.  In order to receive payments from the merchants, the merchants would provide Yoo with several post-dated business checks, which Yoo would fill out and deposit after funds from the transaction reached the merchant's account.

19.   Yoo identified some of the collusive merchants, other than CA Metro Auto, that Yoo had used in his scheme.  In addition, Yoo told officers that the $80,000.00 officers had seized from him represented proceeds from the fraudulent credit card activity.  Yoo also told officers that he was unemployed. Also, Yoo stated that the credit cards and receipts Yoo was carrying in his backpack were related to the synthetic accounts and fraudulent credit card transactions.  In addition, Yoo stated that the handwriting in the notebook that officers found in Yoo's backpack, which notebook contained a ledger reflecting dates, names, actual charge amounts and an 85% figure of the actual charge amount for various transactions, was his.

20.   Yoo also told officers that the safe deposit box keys that officers had found in Yoo's backpack were for safe deposit boxes in Yoo's name.  In addition, Yoo provided officers with the address of Yoo's Los Angeles, California apartment.  When officers asked Yoo what officers would find in Yoo's apartment,

Yoo replied that officers would only find a few more credit cards.  In addition, when officers asked Yoo whether there was any cash in Yoo's apartment, Yoo stated that officers would not find any cash in his apartment.

Law Enforcement Officers' July 20, 2017 Execution Of Search Warrants At Yoo's Apartment And Storage Unit

21.  When officers searched Yoo's apartment on July 20, 2017 during the execution of a State of California search warrant, officers seized a total of $927,760.00 (i.e., part of the defendant currency), including $700,000.00 found inside a duffel bag in a closet, $200,000.00 found inside a satchel in the closet, $20,100.00 found in the bathroom and $7,660.00 found in the bedroom/office desk area.  Officers also found in the closet and in a kitchen glass case the various items that comprise the defendant Approximately Sixty-Four Gold Bars And Three Silver Bars And Miscellaneous Silver and Gold Coins.

22.  In addition, officers found inside Yoo's apartment items reflecting Yoo's involvement in an extensive bust-out credit card fraud scheme.  Officers found in the bedroom/office desk area about 37 cellular telephones labeled on the back with various names; approximately 35 additional cellular telephones without names on them; numerous envelopes containing profile and credit information, counterfeit California drivers licenses, credit cards and additional cellular telephones; notebooks documenting the credit card transactions; and blank checks and credit cards in various names.  Furthermore, when officers executed a State of California search warrant on July 20, 2017 at Yoo's storage unit located on Pico Boulevard in Los Angeles,

California, officers found similar types of credit card fraud indicia, including cellular telephones and credit cards, blank checks for bank accounts and counterfeit drivers' licenses in the names of various persons.

Law Enforcement Officers' Additional July 2017 Search Warrant Executions

23.   On or about July 21, 2017, officers seized during the execution of a State of California search warrant approximately $259,723.76 from Yoo's Bank of America account with the last four digits ending in 6343 and $242,877.66 from Yoo's Bank of America account with the last four digits ending in 2910 (i.e., part of the defendant bank funds).  Between the Yoo 6343 account's March 14, 2016 opening and July 2017, the deposits into Yoo's 6343 account included $150,000.00 deposited via two checks drawn on CA Metro Auto, LLC or the company's predecessor I Auto Parts bank accounts and $94,800.00 deposited via four checks drawn on the account of another collusive merchant.  (As mentioned above, CA Metro Auto paid Yoo by check 85% of the proceeds derived from each fraudulent credit card transaction).  Between December 2014 and July 2017, the deposits into Yoo's 2910 account included approximately $148,000.00 in transfers of funds originating from a PayPal account associated with Yoo and $25,000.00 deposited via a check drawn on a CA Metro Auto bank account.

24.   In addition, on or about July 21, 2017, officers seized during the execution of a State of California search warrant part of the defendant bank funds from Yoo's J.P. Morgan Chase Bank accounts, including $691,558.82 from Yoo's Chase Bank

13

account with the last four digits ending in 6688, $351,201.56 from Yoo's Chase Bank account with the last four digits ending in 6250, $212,107.46 from an account in the name of I. Nuk, Inc. (i.e., Yoo's corporation) with the last four digits ending in 6525 and $104,318.40 from I. Nuk, Inc.'s securities account with the last four digits ending in 0913.  The deposits into Yoo's 6250 account include $92,000.00 deposited via a check drawn on a CA Metro Auto LLC bank account, $241,974.00 deposited via multiple checks drawn on the account of another collusive merchant and $196,000.00 deposited via multiple checks drawn on the account of another collusive merchant while the deposits into I. Nuk, Inc.'s 6525 account include $119,000.00 deposited via two checks drawn on a CA Metro Auto LLC bank account.

25.  On or about July 24, 2017, officers executed State of California search warrants on Yoo's Bank of America and Chase Bank safety deposit boxes, and found $300,000.00 in U.S. Currency (i.e., part of the defendant currency) and fifty one-ounce gold bars (i.e., the defendant Approximately Fifty Gold Bars) in Yoo's Bank of America Safety Deposit Box Number 0347-00V745 and $300,000.00 in U.S. Currency (i.e., part of the defendant currency) in Yoo's Chase Safety Deposit Number 1249.

Lee's September 20, 2017 Discussions With Law Enforcement

26.  Officers spoke with Jimmy Woo Young Lee on September 20, 2017, who told officers the following.  Lee created synthetic identities in order to obtain credit cards, which he took to Kim at CA Metro Auto.  Kim processed the fraudulent credit card transactions, kept 15% of the transaction amount and provided 85% of the transaction amount to Lee by cash or check.

14

Lee began engaging in the scheme in either late 2013 or early 2014, and estimated that he received about $600,000.00 to $800,000.00 from the scheme.  While Lee knew Yoo, Lee did not work with Yoo but instead conducted his own bust-out scheme activity.

Yoo's Attempted Use Of Fraud Proceeds To Purchase Bitcoin

27.  Yoo used $110,000.00 drawn on his account at Hamni Bank with the last four digits ending in 3128, in an attempt to purchase Bitcoin, which is an asset that is more difficult than bank funds for law enforcement to trace.  Four days after officers spoke with Yoo on July 20, 2017, Yoo, on or about July 24, 2017, withdrew $110,000.00 from his Hamni Bank account and had the funds wired to his Coinbase, Inc. account with the last four digits ending in 3128, in an effort to purchase Bitcoin. Before withdrawing the funds from the Hamni Bank account, Yoo had fraud proceeds deposited into that account, including $43,500.00 in five checks drawn on the bank account of a collusive merchant.  Before Yoo could purchase the Bitcoin, officers seized defendant $109,990.00 in Funds Seized From One Coinbase Account on or about July 27, 2017 during the execution of a State of California search warrant at Coinbase, Inc.

Yoo Income

28.  According to records of the California Employment Development Department, which is the California agency responsible for receiving records from employers reflecting wages paid to employees by their employers, there are no records of any wages having been reported relative to Yoo from 2014 to the second quarter of 2017.  Accordingly, Yoo lacks legitimate

1  sources of income to support his acquisition and possession of

2  the defendants.

3  <u>FIRST CLAIM FOR RELIEF</u>

4  29.  Plaintiff incorporates the allegations of paragraphs

5  1-28 above as though fully set forth herein.

6  30.  Based on the above, plaintiff alleges that the

7  defendants constitute or are derived from proceeds traceable to

8  violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access

9  device fraud), 1341 (mail fraud), 1343 (wire fraud) and/or 1344

10 (bank fraud), which are specified unlawful activities as defined

11 in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  The defendants

12 are therefore subject to forfeiture pursuant to 18 U.S.C.

13 § 981(a)(1)(C).  In addition, to the extent that the defendants

14 are not the actual monies or assets directly traceable to the

15 illegal activity identified herein, plaintiff alleges that the

16 defendants are identical property found in the same account or

17 place as the property involved in the specified offense,

18 rendering the defendants subject to forfeiture pursuant to 18

19 U.S.C. § 984.

20 <u>SECOND CLAIM FOR RELIEF</u>

21 31.  Plaintiff incorporates the allegations of paragraphs

22 1-28 above as though fully set forth herein.

23 32.  Based on the above, plaintiff alleges that the

24 defendants constitute property involved in multiple transactions

25 or attempted transactions in violation of 18 U.S.C.

26 § 1956(a)(1)(A)(i) and/or (a)(1)(B)(i), or property traceable to

27 such property, with the specified unlawful activity being

28 violations of 18 U.S.C. §§ 1028 (identity theft), 1029 (access

device fraud), 1341 (mail fraud), 1343 (wire fraud) and/or 1344
(bank fraud).  The defendants are therefore subject to
forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  In addition,
to the extent that the defendants are not the actual monies or
assets directly traceable to the illegal activity identified
herein, plaintiff alleges that the defendants are identical
property found in the same account or place as the property
involved in the specified offense, rendering the defendants
subject to forfeiture pursuant to 18 U.S.C. § 984.

<u>THIRD CLAIM FOR RELIEF</u>

33.  Plaintiff incorporates the allegations of paragraphs
1-28 above as though fully set forth herein.

34.  Based on the above, plaintiff alleges that the
defendants constitute property involved in multiple transactions
or attempted transactions in violation of 18 U.S.C. § 1957(a),
or property traceable to such property, with the specified
unlawful activity being violations of 18 U.S.C. §§ 1028
(identity theft), 1029 (access device fraud), 1341 (mail fraud),
1343 (wire fraud) and/or 1344 (bank fraud).  The defendants are
therefore subject to forfeiture pursuant to 18 U.S.C.
§ 981(a)(1)(A).  In addition, to the extent that the defendants
are not the actual monies or assets directly traceable to the
illegal activity identified herein, plaintiff alleges that the
defendants are identical property found in the same account or
place as the property involved in the specified offense,
rendering the defendants subject to forfeiture pursuant to 18
U.S.C. § 984.

/ / /

1    WHEREFORE, plaintiff United States of America prays:

2        (a)   that due process issue to enforce the forfeiture of

3    the defendants;

4        (b)   that due notice be given to all interested parties to

5    appear and show cause why forfeiture should not be decreed;

6        (c)   that this Court decree forfeiture of the defendants to

7    the United States of America for disposition according to law;

8    and

9        (d)   for such other and further relief as this Court may

10   deem just and proper, together with the costs and disbursements

11   of this action.

12   Dated: December 12, 2017        SANDRA R. BROWN
                                     Acting United States Attorney
13                                   LAWRENCE S. MIDDLETON
                                     Assistant United States Attorney
14                                   Chief, Criminal Division
                                     STEVEN R. WELK
15                                   Assistant United States Attorney
                                     Chief, Asset Forfeiture Section
16

17                                   _____
                                     VICTOR A. RODGERS
18                                   Assistant United States Attorney
                                     Asset Forfeiture Section
19
                                     Attorneys for Plaintiff
20                                   UNITED STATES OF AMERICA

21

22

23

24

25

26

27

28

1                         VERIFICATION

2        I, Ryan Waters, hereby declare that:

3        1.    I am a Special Agent with the United States Secret

4   Service.

5        2.    I have read the above Complaint for Forfeiture and

6   know the contents thereof.

7        3.    The information contained in the Complaint is either

8   known to me personally, was furnished to me by official

9   government sources, or was obtained pursuant to subpoena.  I am

10  informed and believe that the allegations set out in the

11  Complaint are true.

12       I declare under penalty of perjury under the laws of the

13  United States that the foregoing is true and correct.

14       Executed on December _11_, 2017 at _Los Angeles_ , California.

15

16                                          _R. Wath_

17                                          Ryan Waters

18

19

20

21

22

23

24

25

26

27

28